IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

Civil Action No. 06-00520-GMS, 06-00521-GMS

In re:  NELLSON NUTRACEUTICAL, INC., et al.

*Debtors.*

Bankruptcy Case No. 06-10072 (CSS)

**UNITED STATES TRUSTEE AND
OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

*Appellants,*

v.

**NELLSON NUTRACEUTICAL, INC., et al.**

*Appellees.*

APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE
(Christopher S. Sontchi, Judge)

**BRIEF IN SUPPORT OF APPELLEES' MOTION TO
DISMISS APPEAL ON MOOTNESS GROUNDS**

PACHULSKI STANG ZIEHL YOUNG JONES & WEINTRAUB LLP
Laura Davis Jones (Bar No. 2436)
Richard M. Pachulski (CA Bar No. 90073)
Brad R. Godshall (CA Bar No. 105438)
Maxim B. Litvak (CA Bar No. 215852)
Rachel Lowy Werkheiser (Bar No. 3753)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:     (302) 652-4100
Facsimile:     (302) 652-4400

Counsel for the Appellees

DATED:     June 26, 2007

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................1

STATEMENT OF THE CASE.....................................................................................1

STATEMENT OF FACTS ..........................................................................................2

      A.           Background ....................................................................................2

      B.           The Debtors' Implementation Of The Order ...............................3

ARGUMENT.................................................................................................................4

      A.           The Doctrine Of Constitutional Mootness. ..................................4

      B.           The Doctrine Of Equitable Mootness ..........................................6

            1.      Appellants Never Sought Or Obtained A Stay. .........................9

            2.      The Order Has Been Fully Consummated. ...............................10

            3.      A Reversal of the Order Would Prejudice Third Parties...........11

            4.      The Relief Appellants Request Would Undermine The Success Of The Equitable Relief Granted By The Order. ...........................12

            5.      The Public Policy Of Fostering Reliance On Final Bankruptcy Orders Strongly Supports Dismissal Of This Appeal. ..............12

CONCLUSION............................................................................................................14

i

# TABLE OF AUTHORITIES

**Cases**                                                                                            **Page(s)**

**Cases**

*Estate of Richards v. Onouli-Kona Land Co.*,
    846 F.2d 1170, 1172 (9th Cir. 1988) ................................................................. 7

*In re Box Brothers Holding Co.*,
    194 B.R. 32 (D. Del. 1996) ...................................................................... 7, 10, 13

*In re Chateaugay Corp.*,
    988 F.2d 322 (2nd Cir. 1993) ......................................................................... 9

*In re Continental Airlines*,
    91 F.3d 553 (3d Cir. 1996) ..................................... 1, 4, 7, 8, 9, 10, 11, 13

*In re Grand Union Co. v. Saul, Ewing, Remick & Saul*,
    200 B.R. 101 (D. Del. 1996) ....................................................................... 10

*In re Highway Truck Drivers & Helpers Local Union #107*,
    888 F.2d 293 (3rd Cir. 1989) ......................................................................... 9

*In re Public Service Company of New Hampshire*,
    963 F.2d 469, 471-472 (1st Cir. 1992) ......................................................... 7

*In re Quality Spice Corp.*,
    107 B.R. 843 (D.N.J. 1989) .................................................................. 6, 8, 10

*In re Roberts Farms, Inc.*,
    652 F.2d 793 (9th Cir. 1981) ......................................................................... 9

*In re Zenith Electronics Corp.*,
    250 B.R. 207, 215 (D. Del. 2000) ................................................................. 9

*Mac Panel Company v. Virginia Panel Corporation*,
    283 F.3d 622, 625 (4th Cir. 2002) ................................................................. 7

*Matter of Andreuccetti*,
    975 F.2d 413, 418 (7th Cir. 1992) ................................................................. 8

*Mountain Laurel Resources Co. v. Mine Management, Inc.*,
    2000 WL 341913 (4th Cir. April 3, 2000) ...................................................... 8

*Nordhoff Investments Inc. v. Zenith Electronic Corp.*,
    258 F.3d 180, 185 (3rd Cir. 2001) ................................................................. 8

ii

*Rochman v. Northeast Utils. Serv. Group*,
    963 F.2d 469 (1st Cir. 1991), *cert denied*, 506 U.S. 908 (1992) ....................................... 11

*Shawnee Hills, Inc.*,
    2002 WL 31681538 at *2 (S.D. W.Va. November 19, 2002) ........................................... 8

iii

## INTRODUCTION

The appeal of the United States Trustee (the "UST") and the Official Committee of Unsecured Creditors (the "Committee," and together with the UST, the "Appellants") should be dismissed under the well-established doctrines of constitutional and equitable mootness. This appeal involves the Bankruptcy Court's order approving a management incentive plan and explicitly authorizing payments thereunder. No stay pending appeal was obtained (or even requested) and the management incentive plan has been fully consummated. It has now been nearly one year since all payments under the management incentive plan were made to employees. *None of these employees are parties to this appeal.*

Under established Third Circuit precedent, an appeal from a bankruptcy order is moot if, in light of events occurring after the order, granting the requested relief would be impossible or inequitable. *In re Continental Airlines*, 91 F.3d 553, 558-59 (3d Cir. 1996) (*en banc*). This appeal is moot from a constitutional perspective because it is impossible for this Court to order employees, who are not parties to this appeal, to refund monies that they received nearly one year ago under the management incentive plan approved by the Bankruptcy Court. In addition, it would be wholly unfair under the doctrine of equitable mootness to require employees, most of whom probably do not even know about the pendency of this appeal, to return incentive payments that they worked so hard to earn and which they received nearly one year ago. In short, and as explained in more detail below, this appeal presents a clear case for applying the doctrines of constitutional and equitable mootness and dismissing the appeal.

## STATEMENT OF THE CASE

This appeal is asserted by the UST and the Committee from an order (the "Order") of the United States Bankruptcy Court for the District of Delaware entered on July 18, 2006, approving a management incentive plan (the "MIP") and approving payments thereunder

up to an aggregate amount of $1.395 million. [A-2].[1] The UST's notice of appeal was filed on July 27, 2006, and the Committee's notice of appeal was filed on July 28, 2006. [A-2, A-3]. The notices of appeal were docketed on August 23, 2006.

## STATEMENT OF FACTS

**A.    Background.**

On January 28, 2006 (the "Petition Date"), Nellson Nutraceutical, Inc., Nellson Holdings, Inc., Nellson Intermediate Holdings, Inc., Nellson Northern Operating, Inc., Nellson Nutraceutical Eastern Division, Inc., Nellson Nutraceutical Powder Division, Inc., and Vitex Foods, Inc. (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors continue in possession of their properties and are operating and managing their businesses as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On April 28, 2006, the Debtors filed their *Motion for Entry of an Order Authorizing and Approving Payments Under Management Incentive Plan* (the "MIP Motion"). [A-1] By the MIP Motion, the Debtors sought authority to implement, and make payments under, a performance-based management incentive plan (*i.e.*, the MIP). Payments under the MIP were tied to the Debtors achieving certain objective earnings targets. Appellants objected to the MIP on various grounds.

An evidentiary hearing was held on July 10, 2006 and continued to July 13, 2006, at which the Debtors presented two fact witnesses and one expert to substantiate the Debtors' business judgment in proposing the MIP and the reasonableness of the amounts to be paid under

---

[1]  For the convenience of the Court and the parties, relevant documents are included in an Appendix filed contemporaneously herewith, and are labeled in numeric order (A-1, A-2, etc.).

2

the MIP. The Committee presented one expert witness. The UST offered no witnesses. At the conclusion of the hearing on July 13, 2006, the Bankruptcy Court granted the MIP Motion. The Order was subsequently entered on the docket on July 18, 2006. The Order expressly provides that "the Debtors are authorized, but not directed, to make payments to the Employees, under the Management Incentive Plan, up to an aggregate amount of $1.395 million." [A-2]

On July 27, 2006 and July 28, 2006, the UST and the Committee, respectively, each filed a notice of appeal of the Order with the Bankruptcy Court (collectively, the "Notices of Appeal"). [A-3, A-4] The Notices of Appeal were docketed to this Court on August 23, 2006.

In the nearly one year since this appeal was filed, literally nothing has been done by Appellants to further the appeal. Despite the express language of the Order authorizing the Debtors to "make payments to the Employees," neither of the Appellants ever moved to stay the Order pending appeal.

**B.      The Debtors' Implementation Of The Order.**

The Bankruptcy Court's Order has been fully consummated. Following entry of the Order, the Debtors promptly implemented the MIP for the benefit of the company's management employees. The MIP only covered calendar year 2006.

On July 31, 2006, the Debtors made their first payments to employees under the MIP for achieving the operational benchmarks set forth therein for the first half of 2006. *See* Declaration of James M. Fragnoli, submitted herewith. The aggregate sum of $550,000 was paid at that time. *Id.*

3

The Debtors did not achieve their performance targets for the second half of 2006. *Id.* Accordingly, no additional payments under the MIP were made and there are no more payments that will be made under the MIP. *Id.* Hence, by its own terms, the MIP has expired.[2]

## ARGUMENT

### A.    The Doctrine Of Constitutional Mootness.

The doctrine of constitutional mootness is grounded on the duty of an Article III court "to decide live controversies, 'not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" *Official Comm. of Unsecured Creditors of LTV Aerospace & Defense Co. Inc. v. Official Comm. of Unsecured Creditors of LTV Steel Co., Inc. (In re Chateaugay Corp.)*, 988 F.2d 322, 325 (2d Cir. 1993) (quoting *Mills v. Green*, 156 U.S. 651, 653, 16 S.Ct. 132, 133 (1895)).

As stated by the Third Circuit (citing Supreme Court jurisprudence), "an appeal is moot in the constitutional sense only if events have taken place during the pendency of the appeal that make it 'impossible for the court to grant any effectual relief whatsoever.'" *In re Continental Airlines*, 91 F.3d 553, 558 (3d Cir. 1996) (*en banc*) (quoting *Church of Scientology v. United States*, 506 U.S. 9, 12, 113 S.Ct. 447, 499 (1992)). "An appeal is not moot merely because a court cannot restore the parties to the *status quo ante*." *Id.* So long as a court can fashion "some form of meaningful relief," the appeal is not constitutionally moot. *Id.*

Specifically, constitutional limitations on a court's exercise of jurisdiction over an appeal arise when, during the course of an appeal, the appellate court loses jurisdiction over the

---

[2]  The Debtors have since filed a motion to sell substantially all of their operating assets, which is currently set for hearing before the Bankruptcy Court on July 19, 2007.

4

*res* or the parties that are the subject of the appeal, thereby rendering the court powerless to grant the requested relief. *Rochman v. Northeast Util. Servs. Group (In re Public Serv. Co. of New Hampshire)*, 963 F.2d 469, 471, 476 n. 19 (1st Cir. 1992) (citing cases); *see also Credit Alliance Corp. v. Dunning-Ray Ins. Agency, Inc. (In re Blumer)*, 66 B.R. 109, 113 (B.A.P. 9th Cir. 1986), *aff'd*, 826 F.2d 1069 (9th Cir. 1987) ("Effective relief [in an appeal] is impossible if funds have been disbursed to persons who are not parties to the appeal . . . ."); *Evergreen Int'l Airlines, Inc. v. Pan Am Corp. (In re Pan Am Corp.)*, 1995 WL 366356, at *3-5 (S.D.N.Y. June 20, 1995) (dismissing appeal as constitutionally moot on the basis that distributions had already been made to former employees). One court summarized this fundamental jurisdictional principle as follows:

> To begin with, [the] appeal is moot as a constitutional matter because the orders [appellant] seeks to stay have already been carried out and all of the funds . . . have already been disbursed. Thus, even were [appellant] to prevail on appeal, it would be impossible to afford him the relief he seeks, namely return of the distributed funds. This is so because the primary transferee . . . is not a party to this appeal.

*Carr v. King (In re Carr)*, 321 B.R. 702, 707 (E.D. Va. 2005).

In *Chateaugay Corp.*, the Second Circuit was confronted with an appeal of an order authorizing the debtor to pay pension benefits. 988 F.2d at 323. Because no stay had been obtained, the order on appeal had been fully implemented, pension funds had been disbursed to the participants in the plan, and the order had expired by its own terms. *Id.* at 326. The court presumed that the plan's participants had used the benefits they received to meet their living expenses. *Id.* The court also recognized that "[t]he recoupment of these funds from them, in addition to being impracticable, would impose an unfair hardship on *faultless beneficiaries who are not parties to this appeal*." *Id.* (emphasis added). Accordingly, the Second Circuit concluded that the order on appeal was moot and dismissed the appeal. *Id.* at 327; *compare U.S.*

5

*Trustee v. Official Comm. of Equity Security Holders (In re Zenith Elecs. Corp.)*, 329 F.3d 338, 340 n.1 (3d Cir. 2003) (declining to find constitutional mootness in a case where the parties to an appeal continued to exist and could be ordered to disgorge monies received under the order on appeal.)

This appeal presents a highly analogous set of facts to *Chateaugay Corp.* Appellants were clearly on notice, given the express language of the Order, that the Debtors were authorized to implement the MIP and to "make payments to the Employees" thereunder. [A-2] Yet, Appellants took no action to stay the appeal. As a result, the Debtors implemented the MIP and made payments to employees under the MIP, which has since expired by its own terms.

The employees who received payments under the MIP are *not parties to this appeal*. They are "faultless beneficiaries" who earned every penny paid to them under the MIP. Hence, whatever happens in this appeal, it is inconceivable as a matter of due process that this Court could order employees to disgorge monies to the estates, particularly given that the distributions under the MIP were made nearly one year ago. Accordingly, because there is absolutely no form of relief that this Court could fashion, this appeal is constitutionally moot and should be dismissed.

**B.    The Doctrine Of Equitable Mootness.**

Separate and apart from the issue of constitutional mootness, the instant appeal should also be dismissed under the doctrine of equitable mootness. This doctrine contemplates that an appeal should be dismissed if granting the requested relief would be inequitable in light of substantial consummation of the plan or other events. *See, e.g.*, *Continental Airlines*, 91 F.3d at 559. The mootness doctrine has been applied to bankruptcy appeals, often in the context of failure to obtain a stay of the bankruptcy court's order. *Matter of Quality Spice Corporation*, 107 B.R. 843, 849 (D. N.J. 1989).

6

Unlike the distinct concept of constitutional mootness addressed above, equitable mootness does not require a finding that it would be impossible to grant any relief in order to dismiss the appeal. Equitable mootness, rather, is a jurisprudential doctrine which holds that an appeal should be dismissed as moot when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable. *In re Box Bros. Holding Co.*, 194 B.R. 32, 39 (D. Del. 1996); *see also Continental*, 91 F.3d at 558-559. This rule developed in part from the particular need for finality in orders in bankruptcy. *Estate of Richards v. Onouli-Kona Land Co.*, 846 F.2d 1170, 1172 (9th Cir. 1988); *Public Serv. Co. of New Hampshire*, 963 at 471-472 ("[i]n bankruptcy proceedings, the equitable component centers on the important public policy favoring orderly reorganization and settlement of debtor estates by affording finality to the judgments of the bankruptcy court.").

Courts in this Circuit and in other circuits, to a varying degree, have established five non-binding factors to be considered in determining whether it would be "equitable or prudential" to reach the merits of a bankruptcy appeal:

(1)   whether appellant sought or obtained a stay;

(2)   whether the reorganization plan or other equitable relief has been substantially consummated;

(3)   whether the relief requested would affect the rights of parties not before the court;

(4)   whether the relief requested would affect the success of the plan or other equitable relief granted; and

(5)   the public policy of affording finality to bankruptcy judgments.

*Mac Panel Co. v. Virginia Panel Corp.*, 283 F.3d 622, 625 (4th Cir. 2002); *see also Continental*, 91 F.3d at 539. It is not a requirement that all five factors be met in order to estop an appeal as equitably moot. *See, e.g., Nordhoff Investments, Inc. v. Zenith Elec. Corp.*, 258 F.3d 180, 185

7

(3rd Cir. 2001). In addition to other factors, when applying the mootness rule, a court may consider whether, within the facts of the case, it would be highly inequitable to reverse the bankruptcy court's order. *Matter of Andreuccetti*, 975 F.2d 413, 418 (7th Cir. 1992). Of these, the foremost consideration has been whether the reorganization plan or equitable relief requested has been substantially consummated. *Continental*, 91 F.3d at 539.

Although the equitable mootness doctrine has been applied most commonly in the context of appeals pertaining to plan confirmation orders, courts have held that the principle also applies to an order of other equitable relief that has been substantially consummated. *In re Shawnee Hills, Inc.*, 2002 WL 31681538 at *2 (S.D. W.Va. November 19, 2002). As noted by the *Shawnee* court, if there is any difference between simple, preliminary orders in a bankruptcy case, and orders confirming comprehensive reorganization plans, it is that the simple order may easier to unravel - it does not mean that the doctrine of equitable mootness is inapplicable. *Id.* The doctrine has been applied, *inter alia*, to estop appeals of a settlement regarding the disposition of spices in the possession of the debtor, *Quality Spice*, 107 B.R. 843, the settlement of environmental litigation, *Mountain Laurel Resources Co. v. Mine Management, Inc.*, 2000 WL 341913 (4th Cir. April 3, 2000), and an order approving the honoring of payroll checks of the debtor, *Shawnee Hills*. Indeed, in *Continental*, the Third Circuit characterized equitable mootness as a "widely recognized and accepted doctrine" when implementation of the relief requested in an appeal would be inequitable. 91 F.3d at 559.

As discussed below, principles of equity, particularly as viewed within the context of the five-factor analysis, decisively favor dismissal of this appeal on equitable mootness grounds.

8

1.    **Appellants Never Sought Or Obtained A Stay.**

The Third Circuit has repeatedly emphasized the critical importance of obtaining

a stay if an appellant hopes to avoid mootness.  As the Court explained in *In re Highway Truck*

*Drivers & Helpers Local Union #107*, 888 F.2d 293 (3rd Cir. 1989):

> It is obligatory upon appellant . . . to pursue with diligence all
> available remedies to obtain a stay of execution of the
> objectionable order (even to the extent of applying to the Circuit
> Justice for relief . . .), if the failure to do so creates a situation
> rendering it inequitable to reverse the orders appealed from.

*Id.* at 297 (citing *In re Roberts Farms, Inc.*, 652 F.2d 793, 798 (9th Cir. 1981)); *see also*

*Continental*, 91 F.3d at 562 ("[t]he party who appeals without seeking to avail himself of that

protection does so at his own risk.") (citing *In re Chateaugay Corp.*, 988 F.2d 322, 326 (2nd Cir.

1993)).  Moreover, this factor should carry even greater significance where the appellant failed to

even move for a stay pending resolution of a matter on appeal.  *In re Zenith Elecs. Corp.*, 250

B.R. 207, 215 (D. Del. 2000).

Any mootness here is the result of Appellants' own inaction.  Appellants *never*

sought a stay.  With no stay, the Debtors properly proceeded to consummate the Order in

reliance on the Bankruptcy Court's decision.  The Debtors fully implemented the MIP, and made

all payments required thereunder, in accordance with the Debtors' commitment to their

management employees.

This should come to no surprise to the UST and the Committee, given the express

language of the Order authorizing the Debtors to "make payments to the Employees[.]"  [A-2]

The Debtors and their employees obviously could not be placed in the position of waiting for

months for the appeals process to play out in the absence of stay.  Under these circumstances:

9

> it was incumbent on counsel to "act with dispatch" in seeking a
> stay.    That notwithstanding, counsel for [appellant], who is
> experienced bankruptcy counsel, chose not to come prepared with
> papers to file an emergency stay motion.

*In re Tempo Tech. Corp.*, 202 B.R. 363, 374 (D. Del. 1996).  The failure to do so by the UST and

the Committee in this case weighs heavily against Appellants' right to proceed on this appeal.

As Judge McKelvie of this Court noted, "[t]he existence or absence of a stay is a

critical factor in determining whether to dismiss an appeal under the doctrine of equitable

mootness."  *In re Grand Union Co. v. Saul, Ewing, Remick & Saul*, 200 B.R. 101, 105 (D. Del.

1996) (citing *Continental*, *supra*, at 561-563, and *In re Box Bros. Holding Co.*, 194 B.R. 32, 39

(D. Del. 1996)); *see also In re Quality Spice Corp.*, 107 B.R. 843, 855 (D. N.J. 1989) ("it may be

incumbent upon a party appealing a bankruptcy court's ruling to seek a stay lest the appeal in

question be rendered moot by constitutional or related equitable jurisprudential considerations").

Because Appellants "sat on . . . [their] alleged rights" while the Order was being

consummated, they cannot seek to undo the MIP now, months after the fact.  *Tempo*, 202 B.R. at

374; *see also Continental*, 91 F.3d at 562 (failure to obtain stay weighed heavily in favor of

dismissal).

## 2.    The Order Has Been Fully Consummated.

As noted above, the Bankruptcy Court approved the Debtors' MIP Motion on July

18, 2006, nearly one year ago.  [A-2].  Pursuant to the Order, the Bankruptcy Court approved the

MIP and all payments to employees contemplated thereunder, subject to the terms of the MIP.

[A-2]

Promptly after entry of the Order, the Debtors implemented the MIP for the

benefit of their management employees.  On July 31, 2006, the Debtors paid the aggregate sum

of $550,000 in accordance with the MIP.  *See* Declaration of James M. Fragnoli, submitted

10

herewith. No other payments have been made, or will be made, under the MIP. *Id.* Because the

MIP only applied to calendar year 2006, it is not only substantially consummated, it has expired

by its own terms. *Compare Continental*, 91 F.3d at 560-561 (the doctrine of equitable mootness

does not require complete consummation of the transactions contemplated by the order being

appealed, but only substantial consummation). Under these circumstances, this Court should

dismiss the appeal as moot.

### 3.    A Reversal of the Order Would Prejudice Third Parties.

In its discussion of the equitable mootness factors, the Third Circuit considered

effects on third parties to be of great concern:

> High on the list of prudential considerations taken into account by
> courts considering whether to allow an appeal following a
> consummated reorganization is the reliance by third parties, in
> particular investors, on the finality of the transaction. . . . The
> concept of "mootness" from a prudential standpoint protects the
> interests of non-adverse third parties who are not before the
> reviewing court but who have acted in reliance upon the plan as
> implemented.

*Continental*, 91 F.3d at 562 (citations omitted).

Unwinding the Order approving the MIP clearly would have a deleterious impact

on third parties who are not before this Court. The Debtors' employees relied on the MIP, they

dedicated themselves towards satisfying the obligations under the MIP, and they were paid the

aggregate sum of $550,000 to compensate them for achieving certain performance benchmarks

under the MIP. It would be particularly inappropriate, and dangerously harmful to the estates, to

force employees to return the money that they earned (nearly one year ago) in reliance on the

MIP as implemented in accordance with the Bankruptcy Court's Order.

Simply put, the Debtors' employees should not be prejudiced for the Appellants'

lack of diligence in pursuing this appeal. Moreover, as addressed above, because the Debtors'

11

employees are not parties to this appeal, it would be impossible as a matter of due process to force them as part of this appeal to return the monies that they received under the MIP.

>   **4.    The Relief Appellants Request Would Undermine The Success Of The Equitable Relief Granted By The Order.**

By implementing the MIP, the Debtors maximized the value of these estates by incentivizing management towards certain operational goals. Even though not all such goals were reached, the Debtors' estates benefited from having the MIP in place.

More importantly, overturning the MIP at this late stage (nearly one year after the last payments were made to employees) could have a disastrous effect on employee morale and the Debtors' business. If the Debtors' key management employees were hypothetically required to return the money that they earned under the MIP (which is not even possible given that such employees are not parties to this appeal), the Debtors could face a mass exodus of management personnel.

The Debtors' employees relied on the MIP. They worked towards the objectives under the MIP and they reached some of those goals. It is simply too late to undermine the success of the MIP by allowing this appeal to proceed.

>   **5.    The Public Policy Of Fostering Reliance On Final Bankruptcy Orders Strongly Supports Dismissal Of This Appeal.**

The fifth and final factor in assessing equitable mootness is the "public policy" favoring finality of bankruptcy judgments. As the Third Circuit explained:

>   [W]e should ask whether we want to encourage or discourage reliance by investors and others on the finality of bankruptcy confirmation orders. The strong public policy in favor of maximizing debtors' estates and facilitating successful reorganization, reflected in the Code itself, clearly weighs in favor of encouraging such reliance. Indeed, the importance of allowing approved reorganizations to go forward in reliance on bankruptcy court confirmation orders may be the central animating force behind the equitable mootness doctrine.

12

*Continental*, 91 F.3d 553, 565; *see also Box Bros.*, 194 B.R. at 42 (noting the "strong public policy in proceeding with the implementation of the reorganization of a debtor in the federal bankruptcy laws").

The public policy favoring finality of bankruptcy court orders is particularly relevant to this case.

First, Appellants took no action whatsoever to prosecute this appeal over the last year. Most notably, Appellants failed to seek a stay, despite the express provision in the Order authorizing the Debtors to make payments to employees under the MIP.

Second, the Debtors were more than reasonable in relying upon the Order in implementing the MIP. The Debtors needed to get the MIP in place promptly to properly incentivize their management employees to achieve certain operational objectives.

Third, all of the money at issue in this appeal has already been paid out to the Debtors' employees, who are not parties to this appeal. Hence, the *res* that is at issue in this appeal is out of the hands of the Debtors' estates as of nearly one year ago.

To reverse the Order at this late stage would directly undermine the "central animating force behind the equitable mootness doctrine": encouraging reliance on the finality of bankruptcy orders. This is particularly true given that Appellants had more than ample opportunity to pursue a stay, and chose not to do so, thus setting in motion the very events that make this appeal equitably moot.

## CONCLUSION

This appeal is moot on the basis of the doctrines of constitutional and equitable mootness. The subject of this appeal -- the Debtors' MIP -- has already expired by its own terms. All payments under the MIP have been made. And, most importantly, the employees who received the money under the MIP are not parties to this appeal, meaning that there is no form of relief that could be granted in this appeal that could bring this money back to the Debtors' estates. For the foregoing reasons, the Debtors respectfully request that this Court dismiss this appeal on mootness grounds.

Dated: June 26, 2007

PACHULSKI STANG ZIEHL YOUNG JONES &
WEINTRAUB LLP

*Rachel L Werkheiser*

Laura Davis Jones (Bar No. 2436)
Richard M. Pachulski (CA Bar No. 90073)
Brad R. Godshall (CA Bar No. 105438)
Maxim B. Litvak (CA Bar No. 215852)
Rachel Lowy Werkheiser (Bar No. 3753)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email: ljones@pszyjw.com
        rpachulski@pszyjw.com
        bgodshall@pszyjw.com
        mlitvak@pszyjw.com
        rwerkheiser@pszyjw.com

Counsel for Appellees

14

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

In re:

NELLSON NUTRACEUTICAL, INC., et al.,

_____ Debtors.

| | |
|---|---|
| UNITED STATES TRUSTEE AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, | |
| Appellants, | Civil Action No. 06-520 (GMS) Civil Action No. 06-521 (GMS) |
| v. | |
| NELLSON NUTRACEUTICAL, INC., et al., | Bankruptcy Case No. 06-10072 (CSS) Appeal No. 06-45 |
| Appellees. | |

## AFFIDAVIT OF SERVICE

| | |
|---|---|
| STATE OF DELAWARE | ) |
| | )SS: |
| COUNTY OF NEW CASTLE | ) |

      Karina Yee, being duly sworn according to law, deposes and says that she is employed by the law firm of Pachulski Stang Ziehl Young Jones & Weintraub LLP, counsel for the Appellees, in the above-captioned action, and that on the 26th day of June, 2007, she caused a copy of the following document(s) to be served upon the attached service list(s) in the manner indicated:

**Brief in Support of Appellees' Motion to Dismiss Appeal on Mootness Grounds**

Karina Yee
_____
Karina Yee

Sworn to and subscribed before
me this 26 day of June, 2007

_____
Notary Public
My Commission Expires: 03-21-08

VANESSA A. PRESTON
Notary Public - State of Delaware
My Comm. Expires March 21, 2008

**Nellson Nutraceutical, Inc. Appeal Service List**
Case No. 06-10072 (CSS)
Document No. 120478
02 – Interoffice Delivery
06 – Hand Delivery
05 – First Class Mail

(Counsel to the Debtors)
Laura Davis Jones, Esquire
Rachel Lowy Werkheiser, Esquire
Pachulski Stang Ziehl Young Jones &
Weintraub LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705

**Interoffice Mail**
(Counsel to the Debtors)
Maxim B. Litvak, Esquire
Pachulski Stang Ziehl Young Jones &
Weintraub LLP
150 California Street, 15th Floor
San Francisco, CA  94111

**Interoffice Mail**
(Counsel to the Debtors)
Richard M. Pachulski, Esquire
Brad R. Godshall, Esquire
Pachulski Stang Ziehl Young Jones &
Weintraub LLP
10100 Santa Monica Boulevard, Suite 1100
Los Angeles, CA  90067

**Hand Delivery**
(United States Trustee)
William Harrington, Esquire
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 N. King Street, Suite 2207
Lockbox 35
Wilmington, DE  19801

**Hand Delivery**
(Mediator)
J. Richard Tucker, Esquire
Maron Marvel Bradley & Anderson, P.A.
1201 N. Market Street, Suite 900
Wilmington, DE  19801

**Hand Delivery**
(Counsel to Fremont Investors VII, LLC)
Mark D. Collins, Esquire
Richards Layton & Finger
One Rodney Square
920 North King Street
Wilmington, DE  19801

**Hand Delivery**
(Counsel to Informal Committee of First Lien
Lenders)
Robert S. Brady, Esquire
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

**Hand Delivery**
(Counsel to UBS)
Richard W. Riley, Esquire
Duane Morris LLP
1100 North Market Street, Suite 1200
Wilmington, DE  19801

**Hand Delivery**
(Counsel to the Official Committee of
Unsecured Creditors)
Kurt F. Gwynne, Esquire
Reed Smith LLP
1201 Market Street, Suite 1500
Wilmington, DE  19801

**First Class Mail**
(Counsel to UBS)
James J. Holman , Esquire
Duane Morris LLP
30 South 17th Street
Philadelphia, PA

**First Class Mail**
(Counsel to UBS)
Gregory A. Bray, Esquire
Thomas R. Kreller, Esquire
Milbank, Tweed, Hadley & McCloy LLP
601 South Figueroa Street, 30th Floor
Los Angeles, CA  90017

**First Class Mail**
(Counsel to Fremont Investors VII, LLC)
Suzzanne Uhland, Esquire
O'Melveny & Myers LLP
Embarcadero Center West
275 Battery Street
San Francisco, CA  94111-3305

**Fist Class Mail**
(Counsel to the Ad Hoc Committee of First
Lien Lenders)
Fred Hodara, Esquire
Akin Gump Strauss Hauer & Feld LLP
590 Madison Avenue
New York, NY  10022

**First Class Mail**
(Counsel to the Official Committee of
Unsecured Creditors)
Claudia Springer, Esquire
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103